**NATIONAL TREASURY EMPLOYEES UNION, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 85–4805
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

July 16, 1986.

**114**

M. Kathryn Durham, Lois G. Williams, Martha P. Owen, Austin, Tex., for petitioner.

Pamela P. Johnson, Ira Sandron, Attys., Ruth Peters, Executive Director, F.L.R.A., Steven H. Svartz, Deputy Sol., Washington, D.C., Gary A. Anderson, Asst. Reg. Counsel, Gen. Legal Services, I.R.S., Susan E. Jelen, Atty., Office of Gen. Counsel, F.L.R.A., Region VI, Dallas, Tex., for respondent.

Before CLARK, Chief Judge, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

The National Treasury Employees Union (the Union) petitions for review of an order of the Federal Labor Relations Authority (FLRA), which dismissed a charge filed by the Union as untimely. Because there is substantial evidence to support FLRA's conclusion that the Union had constructive notice of the policy challenged more than six months before the charge was filed, we deny the petition for review.

I

The Internal Revenue Service (IRS) of the United States Department of the Treasury and the National Treasury Employees Union are parties to a national collective bargaining agreement, which covers the Houston District of the IRS. Article 39, Section 3A of the national agreement provides that the employer will give the Union National President advance notice of any proposed changes in conditions of employment. Under Section 3B, where the proposed change is limited to one office, this notice may be given to the local chapter president or joint council chairperson.

In the spring of 1982, the Director of the IRS Houston District, Arturo Jacobs, sought to develop a dress code for the Houston District's employees. Several meetings were held between management and Union representatives during March and April, and the general outlines of a dress code were discussed. It is undisputed that the Union agreed to some elements of a dress code; however, there is a substantial conflict as to what exactly was agreed to. Jacobs testified that the Union had agreed to a "no blue jeans" policy for all Houston District employees. The Union representatives, on the other hand, stated that the agreement was that employees who routinely came in contact with the public would not wear jeans but that non-contact employees could continue to wear jeans. Because the dress code was neither written nor precise, this specific issue did not surface in the immediately ensuing months, although discussions among management and between management and the Union continued concerning the parameters of the dress code.

In November 1982, the Centralized Service Branch (CSB) was opened in the Houston District. The CSB is a non-contact office.

On November 15, two orientation meetings were held for CSB employees. The local Union chapter president, Tony Ovalle, attended these meetings. No discussion of the dress code took place at the meetings. However, later in the day there were a series of smaller meetings held by unit managers with their respective employees. At these sessions the managers told the CSB employees that men were to wear shirt and ties; jeans were not to be worn except when "dirty" work was being done. Although Ovalle was invited to attend the smaller meetings, he did not do so.

From November 15, 1982 to May 5, 1983, some CSB employees did, at times, wear jeans to work. In some instances they were told by management not to wear

them. On May 5, two CSB employees were reprimanded for wearing jeans. They brought the matter to the attention of the Union steward who informed Ovalle. Ovalle raised the problem with Jacobs. He stated that the agreement between the Union and management had been that non-contact employees could wear jeans. Management contended that all employees were prohibited from wearing jeans.

After failing to resolve the problem in discussions with management, the Union filed an unfair labor practice charge on July 5, 1983. The charge alleged that the IRS had breached its duty to bargain in good faith with the Union by unilaterally changing the conditions of employment. The Administrative Law Judge (ALJ) concluded that the charge had been untimely filed under 5 U.S.C. § 7118(a)(4).[1] He determined that the dress code prohibiting the wearing of blue jeans by any CSB employee had been implemented on November 15, 1982. He also found that the Union was not prevented from filing a charge by reason of any breach of duty or concealment on the part of the IRS. Since the charge was filed more than six months after the implementation of the policy complained of, the ALJ recommended dismissal.

The Federal Labor Relations Authority adopted the ALJ's findings and conclusions. FLRA specifically noted that the prohibition against wearing jeans was announced at open meetings, to which Union representatives had been invited, on November 15, 1982, and that the prohibition was generally enforced thereafter. FLRA dismissed the charge and the Union petitions for review of FLRA's order.

## II

Although each party claims that the other advances a novel and unsupported legal theory, there is actually little disagreement between them on the proper legal standard to be applied to this case. FLRA asserts that the Union's position is that the six month statute of limitations is automatically tolled in the absence of formal or actual notice to the collective bargaining representative of the change in working conditions. The Union, on the other hand, maintains that FLRA would not recognize a tolling of the limitations period unless the agency concealed the policy change, even though the Union did not discover and could not reasonably have discovered the policy change until less than six months before the charge was filed. Arguably the ALJ did adopt this view, holding that the implementation of a unilateral change commenced the limitations period unless the agency concealed the change. However, FLRA's position and the basis of its dismissal is that the Union had "constructive notice" of the change on November 15, 1982. In fact, both parties agree that the limitations period commences when, and only when, the Union has actual or constructive notice of the change (unless there is concealment). Since this case does not involve actual notice (or concealment), the only question on appeal is whether there is substantial evidence to support FLRA's finding of constructive notice as of November 15, 1982. *See NLRB v. Don Burgess Constr. Corp.*, 596 F.2d 378, 383 & n. 3 (9th Cir.), *cert. denied*, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979).

The Union had constructive notice of the dress code prohibiting all employees from

---

1. 5 U.S.C. § 7118(a)(4) provides:

 (A) Except as provided in subparagraph (B) of this paragraph, no complaint shall be issued based on any alleged unfair labor practice which occurred more than 6 months before the filing of the charge with the Authority.

 (B) If the General Counsel determines that the person filing any charge was prevented from filing the charge during the 6–month period referred to in subparagraph (A) of this paragraph by reason of—

 (i) any failure of the agency or labor organization against which the charge is made to perform a duty owed to the person, or
 (ii) any concealment which prevented discovery of the alleged unfair labor practice during the 6–month period,
 the General Counsel may issue a complaint based on the charge if the charge was filed during the 6–month period beginning on the day of the discovery by the person of the unfair labor practice.

wearing blue jeans at the time that, in the exercise of reasonable diligence, it should have discovered that prohibition. *See NLRB v. Allied Products Corp., Richard Bros. Division,* 548 F.2d 644, 650 (6th Cir. 1977) (construing 29 U.S.C. § 160(b), an analogous six month statute of limitations period in the National Labor Relations Act). Also relevant to a finding of constructive notice is whether the agency took reasonable steps to notify the union of the change in working conditions. Department of the Air Force, Electronic Sys. Div., Hanscom Air Force Base, Mass., 7 F.L.R.A. 447, 452 (1981) (constructive notice found where the agency invited the union to the meeting where the change was announced and thereafter sent the union the minutes of the meeting which mentioned the notification of the change).

In the present case the IRS clearly indicated, in the spring of 1982, its desire for a dress code that would prohibit all blue jeans. The ALJ found that Ovalle knew that management did not want jeans worn by any employees. Furthermore, even before November 15, some meetings were held in which unit managers told employees that no jeans were allowed.

On November 15, the Union was invited to meetings at which the prohibition on jeans was announced. Furthermore, CSB employees were told of this policy and it was thereafter enforced, with some exceptions, in the CSB office. Thus, the CSB Union stewards, at least, knew or should have known of the policy. While such knowledge may not be directly attributable to the Union, it demonstrates that the Union, in the exercise of reasonable diligence, should have been aware of the no jeans policy. *See AMCAR Div. v. NLRB,* 596 F.2d 1344, 1352 (8th Cir.1979).

The foregoing constitutes substantial evidence to support the conclusion that the Union had constructive notice of the dress code change as of November 15, 1982.

### III

As the record discloses substantial evidence to support FLRA's conclusion that the Union had constructive notice of the challenged policy as of November 15, 1982, and that the charge filed by the Union was therefore untimely, the petition for review is

DENIED.